and Saldivar. Thank you, Your Honor. My name is Joshua Dreitel. I am joined by Murray Singer. We tried the case below. We represent Melvi Amador-Rios. And I want to talk about the Brady issue during argument. It's a little more self-contained and I think more conducive to argument. And I also want to talk first about materiality because obviously if we don't have materiality, none of the other more procedural aspects apply. Here it's really indisputable that what we were looking for and what we believe is Brady material is material in the sense that it would have allowed us to present a defense that there were two persons intimately involved in the crimes charged, one of whom there was Brady material about them actually participating in the homicide, who were absent from this case. And we asked about the relationship between that, between those two parties. I'm trying to be cryptic, obviously, because some of this is sealed. The relationship that they had with either the Queens District Attorney's Office or the NYPD. And the NYPD created this whole investigation. They responded to the scene. They did all the interviews. There are hour-long videos of Can I ask, counsel, so you have, you were given the sort of referred to as potential alternative perpetrator information, which I think is indisputably Brady. What did you do with it at trial? We investigated it. We were not, we did, we could not get access to people in the sense of for admissible evidence. People either would not speak to us. The government never gave us the name of the person who was the source of the first material. They gave us the name of a lawyer, and we contacted the lawyer. They would not speak to us. The Brady letter didn't include the name? No. Not the first letter. Not the more expansive letter, about a wholly different theory of why this murder occurred. The motivation behind it. But you had the name of the lawyer. Yes, we did get the name of the lawyer, and we pursued it. And you wouldn't, just to play that out then, you would not have been able to contact the represented party knowing that they were represented, right? Directly. You wouldn't have been able to call that person live knowing that they were represented. We would always go through the lawyer. You have to go through counsel. Yes. Professional responsibility rules. Yes. I think New York State is a little unclear about that, if it's not a party, if it's just a witness. But we were directed to go through the lawyer. But the point about what was not disclosed is really the crux of why these two persons, intimately involved in these offenses, one who's involved in the hierarchy, who's ordering, who's involved in the meetings that these crimes are directed to occur, whether they have a relationship. So our defense, a defense we couldn't do just from simply the Brady that was provided to us, was a defense that Mr. Amadorios is the fall guy. Because these two people who are intimately involved in these offenses are being protected because of their status. But Brady is not, I mean, Brady is not a discovery obligation. There was Brady material produced. What is, what is your basis for saying there was additional material that was not produced? Because these persons are not indicted. There's no statements. They're not witnesses. They're essentially disappeared from this case. We want to know whether there's a relationship. They refuse to answer that question. They say there's no relationship with the FBI because they take this. Go ahead, Your Honor. What I understand the question is, you're saying we don't know if X is true, meaning it may be true, it might not be true. You usually don't assess Brady by saying, we don't know if there's Brady material out there. There's a Brady violation because you don't know. That's not how Brady usually works. You have to show materiality, not the potential existence of information that if we imagine it in the light most favorable to the defense, we can imagine it exists and we can imagine it would be material. Those are two assumptions that one has to make. And that's not how, at least I don't understand that's how Brady works. I think it's simpler than that, Your Honor, which is that we ask a question where if the yes answer is Brady, a no answer is not Brady. We don't get any answer because they're taking this extraordinarily constricted version of what a prosecution team is. So you're saying you're excused from answering the materiality question? No, I'm not. Because you're saying, again, you're going to, yes, one answer is material. The other answer is not material. You don't know the answer and you're asking us to assume, because they haven't answered, that the answer must be yes, material. Well, because if it's Brady, they have to answer. Right, but that's what we're trying to get to the point of materiality. Yes. And it seems like your argument is because you don't know whether there's material out there, we must assume that it is out there. And I'm saying if you're going all the way to materiality, we have to talk about materiality. If not, you have to talk about why they were obliged to answer and then you're going to the prosecution team question. Yes, but materiality is also that we have an extraordinarily good faith reason to believe that the answer is yes. There is no reason why these two people are walking around free. Is that the standard of materiality? I thought you have to show that you have a good faith belief that it may be out there and it may be material? No, that's not materiality. Materiality is its impact on the jury, not as to whether it exists or not. But why is your good faith belief that it may be there? Is that the standard, whether you have a good faith belief? No, but the materiality standard is not how the court presented it either. The materiality is whether it would have had an impact on the jury. Right. And a yes answer would have given us an extraordinarily valuable defense. But you're assuming a yes answer. That's what I'm saying. You keep assuming a yes answer. Because they're, and that's where we get into the constricted version of the prosecution team. Well, before we get there, that's where we get into the question of what is the nature of the Brady obligation? And I'm trying to make sure I understand precisely what your argument is. Brady material was produced. You said we want the answer to some additional question. We believe there's additional information. The government's obligation is a profound one and a constitutional one, but it is to turn over evidence in their possession that's favorable. It's not a right of the defendant to seek evidence and to require a search for evidence without an understanding that it exists. So my question is, what is the basis for saying that there was additional favorable evidence that was suppressed? The fact that these two people were not charged, they're not witnesses, there's no basis to believe that they should not be. One who actually is at meetings where these crimes are ordered according to witnesses. This is not our, we're not making this up. This is all from the trial record, from the 3500 material, from the Brady disclosures beforehand. But really, the only reason the government wouldn't have an obligation is if the prosecution team is so narrow that it doesn't include the agency that did the entire investigation, that turned over essentially a turnkey turnover of the trial, of the investigative inventory to the government, and the government acknowledged that. To the extent you can answer it, if the answer, if you've gotten the answer and the answer was yes, what then do you do with it? We find witnesses, either they're government witnesses or the witnesses themselves. We can subpoena them and get them to acknowledge on the record, and maybe it's a stipulation, that these are people who have informant or cooperator status with either NYPD or the Queens District Attorney's Office, and they are being protected. And our client is being prosecuted in their stead. So, there's lots of testimony, there's, well, there's testimony related to your client's role. There's cell site location information that places your client at the scene of one of the murders. How does all of that, how does that relate to the case? How does that come into play with what you've just suggested? And to the extent you can, walk me through how you get in through testimony the information that you just suggested you would try to get in. It's a little hard to see. Can I answer the first question first? Well, so it's not a sufficiency test, Brady. So the fact that there's sufficient evidence does not decide the issue. All of these cooperators, I should say none of the cooperators, particularly with respect to the homicide, none of them were cooperators before everyone knew who the target was, which was Melvi Amador-Rios, our client. They all were in the same community. They were proffers down the road. It's easy for them to just include Mr. Amador-Rios in a meeting. It's easy for them to do that instead of the people who are actually responsible. As far as the, I apologize, the second, oh, about how do we get it in, Kyle T. Whitley is, the government's, the quality of the government's investigation and any biases in there are fruit for us. They're relevant to the case. We're allowed to get into that. We're allowed to suggest to the jury, to argue to the jury. It's not a suggestion to argue to the jury. These two people are protected. They're not prosecuted. You've heard all this evidence of who they are and their participation in these crimes. They're not here because they're, because of their status. He's here as the fall guy for this set of crimes. My time is up in case the court, I have a minute of rebuttal. Thank you. Good morning. May it please the court, my name is Anna Scott Coe. I represent Antonio Salvador on appeal. I did not represent Mr. Salvador in the case. The court's position on the case as I mentioned is not sufficiently clear. It may not be imposed. The district court's imposition of a special condition requiring that Mr. Salvador cooperate with and abide by all instructions of immigration authorities is too vague and overbroad to comply with due process. This court should vacate that condition. This court has said that a condition is too vague if it is put differently. A condition is unconstitutional if it is so vague that people of common intelligence must necessarily guess at its meaning and may differ as to its application. Can I ask a preliminary question? Your client, as was said repeatedly below, is likely to be subject to deportation on release and he was already in removal proceedings at the time of sentencing. So isn't it pretty unlikely that he's ever going to be subject to a term of supervised release? So, in arguing that this court should dismiss on ripeness grounds, which is basically what your Honor is referring to, the government makes no effort to distinguish other cases in which this court has vacated or remanded where conditions are vague. So, for example, in United States v. Reeves, this court held that a special condition that was triggered by certain actions by the defendant upon entering into, quote, a significant romantic relationship would be unconstitutional. It was deemed too vague to be enforceable. The court said that a defendant's continued freedom during a supervised release should not hinge on the accuracy of his prediction. Even though it was not entirely foreseeable that the defendant in Reeves would ever enter into a romantic relationship, would ever have a second date, this court did not dismiss the appeal on ripeness grounds. Rather, it vacated that condition. Similarly, in Peterson, or Petterson, I'm not sure how you pronounce it, the court found that a condition for which the defendant was not permitted to enter into prohibiting the defendant from being on any school grounds, child care center, playground, park, recreational facility, or area where children are likely to congregate violated due process because it was ambiguous and depending on its meaning, excessively broad. It did not wait to determine whether or not the defendant traveled to Yellowstone Park and potentially violated the condition to determine whether or not it was vague. It did not say that it was unripe because he had not yet done so. It remanded for clarification. But in this case, isn't there a significantly less likelihood or higher risk that your client will never be on a term of supervision? In Peterson, which I recall, there was no question, there was no reason to think that the defendant would not be subject to supervised release at some time. Your case seems different because you're asking us to look at the vagueness of a provision that says that your client may never be subject to supervised release. So two responses to that. First of all, as the government points out in a footnote, this Court has not squarely decided whether a term of supervised release begins upon a defendant's transfer from the attorney general's custody to the custody of immigration authorities or after release from immigration authorities, should that ever happen. So if my client goes from jail or prison to ICE custody, it is possible that while in ICE custody, he is on supervised release. That's not been squarely decided. Secondly, the government inconsistently asserts that a term of supervised release is warranted for additional deterrence because of my client's strong ties to the United States, but simultaneously argues that the conditions are irrelevant because Mr. Salvador will be transferred to immigration custody and deported before supervision potentially commences. So that seems contradictory and in direct violation with the imposition of supervised release at all, as contemplated by the guidelines, which actually contra — which actually says that supervised release should not be imposed in situations like this where deportation is presumptively mandatory and the statute does not require it. Can I direct your attention to a different preliminary question, which would be the standard of review? I understand that your position is that this would be merely a forfeited error, reviewable for plain error. Is that right? Yes, Your Honor. And I understand the government argues that it's waiver. Maybe if we could take the waiver question first. At the conclusion, or near the end of the sentencing hearing, the district court, after declaring what conditions it intended to impose, asked, does either counsel know of any legal reason why the sentence can't be imposed as stated? In other words, it invited any objections. And as I understand, counsel, for the defendant, who I understand was not you, stood up and said no. Why is that not a waiver? When a court looks at a lawyer and says, do you object, and there is an affirmative representation, I do not object, doesn't that go beyond plain error? Forfeiture, I always think of, it never came up. But if you affirmatively state to the court, no, why is that not waiver? So this court has distinguished waiver from forfeiture, where waiver is the intentional relinquishment of a known right. In other words, it usually has some strategic component. But why does it need to? Why do we have to delve into the strategic nature? Now, I understand that sometimes in the face of silence, we may discern a strategic reason and say, well, it's not really forfeiture, because we can tell from the context that you very purposely did not stand up and object. But why do we need to go into someone's motives when they make an affirmative and conclusive statement? Clearly knowing the decision not to object. So I've spent over a decade wrestling with the difference between waiver and forfeiture. Our opinions are not always consistent. That's why, since you're up there, I thought you could help us. Thank you. I don't think this Court needs to decide that issue here, because where, as here, a defendant had notice of a special condition in the pre-sentence report and did not object to it at sentencing, and where it specifically relates to sentencing, this Court has consistently reviewed for plain error. That's in DuPage's 2008, Green's 2010. Yeah, but I guess I'm drawing the distinction here where the Court looks the lawyer in the eye and says, do you object? And the lawyer says, no. That seems to me to be something that is not covered by your other cases. And one of the reasons I'm interested is there are other circuits, like the Seventh Circuit, that have looked at that exact scenario and say, that's waiver. That's square on waiver. And why would we not want to expressly join that? I think it is covered by those other cases. That question, is there any legal basis for not imposing the sentence, is one that's routinely asked, in my experience, at the end of a sentencing. And so I don't think, I think the fact... If the judge had said, I want you to look at all of the conditions of supervised release in the PSR, and tell me now if you have any legal objections to them, and counsel said, no, would that be true waiver? Again, I don't think so. I believe waiver needs to have some strategic component, meaning that not objecting benefits is the defendant in some way that an objection would not. You're going to have a hearing or a declaration from counsel with respect to each of these questions? I mean, sometimes lawyers don't object if they think it's a frivolous objection, or it's going to annoy the district judge, or maybe if there's supervised release, that'll lighten the incarceratory sentence. And I think, respectfully, with lawyers not objecting below the minimum sentence, I think it would be a good idea to have a waiver because they might not want to annoy the district judge. That's part of the reason I have a job, is because it actually is a viable objection, and here, one that fundamentally violates due process. And... Are you saying it can't be waived? What would the record look like if this objection, if it were waived? What would the record look like? Or can it not be waived? Wanting to respond to the hypothetical, but on the spot. Let's start with can it be waived? Can it be waived? I believe that if there were some benefit, for example, if the government said, we will provide you with a plea agreement where we're dropping a charge, but you have to agree that you're complying with all instructions and cooperating with all immigration authorities, no matter what country they come from or what those instructions are. And defense counsel said, we really want to... The government has to trade you a benefit in order for... I've never heard... No, it doesn't have to trade. You asked me for an example of where a waiver might... No, I'm just starting with the basic proposition. Can counsel, on behalf of her client, waive, true waive, an objection to a condition of supervised release, so that it cannot be raised on appeal? Outside of a plea agreement? Again, answering in the hypothetical, I believe that that could be possible where there is evidence that that was strategic and that there was some benefit to the defendant in waiving an objection, as opposed to forfeiting it, which is overlooking the fact that there was a legal basis for objecting. But let me just go back to cases, say, with jury instruction. Sometimes you have a charge conference. And the defense is asked by the court, well, how about this jury instruction? And the defense says, yeah, that's fine, Your Honor. We're good with that. We've held that that's waiver, right? That's Agrawal, I think. But we never would insist to say, well, yeah, the lawyer said, Your Honor, I consent to that instruction, but we're not going to find waiver unless we thought there was a good strategic decision behind it. It might have been a bad decision, and in fact, it seems to me a waiver, as a doctrine, prevents us from reviewing both meritorious and unmeritorious claims. So in other words, it could have been made for a bad or no strategic decision, as long as it was a knowing waiver. It's sort of like it doesn't have to be based on adequate consideration, or we're not going to review whether it was a smart waiver or not. It could have been made for a dumb waiver. In Agrawal, this Court did find that it was a strategic decision, and so waiver applied there. I don't think it can find the same here. And particularly given that this is a fundamental constitutional right dealing with due process, and something that has been in the press and the courts recently, it should not err, it should err on the side of forfeiture and not waiver here. In conclusion, just as this Court cannot construe a criminal statute on the assumption that the government will use it responsibly, it also should not assume that the government will exercise restraint in enforcing conditions of supervised release that are vague in Agrawal. So just on the substance of the vagueness argument, with the presider's permission, so is there a version of this condition? That you think can lawfully be imposed that requires following of immigration directives and orders? I do, Your Honor. I see two options, three options for this Court to remedy the situation. One is to remand for the district court to consider whether supervised release is required under these circumstances at all. As we argued in our briefs, we don't believe that the record supports it, and that it's not necessary for the reasons that Judge Livingston raised. The second is to simply vacate the condition, again, for the reason that, well, maybe the defendant never served supervised release, but it's clearly too vague to comply with due process. And the third would be to remand for the district court to modify or eliminate that condition, possibly by saying the lawfully required condition. I would follow the lawful instructions of U.S. immigration authorities, as one hypothetical, but I'm not in the business of rewriting it. So that would not be vague, follow the lawful instructions? It would be less overbroad, because it would also limit the scope of the immigration authorities to which my client must cooperate and follow instructions. Section 13 says to follow the instructions of the probation officer related to the conditions of supervision. Unconstitutionally vague, or no, because it's not in the news? I'm sorry, I didn't hear the last part. Forget the last part. Is that unconstitutionally vague? I have not thought that particular provision through. I'm assuming the probation officer is defined. Sorry, I'm getting some feedback here. I'm assuming the probation officer is defined as the U.S. probation officer that is governing the case in the Eastern District of New York, and not a probation officer in El Salvador, for example, whereas immigration authorities is not so defined here in the special condition. Thank you. May it please the Court. My name is Raffaella Bellazer, and I represent the government in this case. The judgments entered in these cases should be affirmed in all respects. I'll start with the Brady argument, as that was discussed in my adversary's argument. As this Court points out implicitly and explicitly, the defendant's argument, the defendant argues that because two individuals who were members in this MS-13 CLIC were not charged federally, that they, one, must be cooperating with some law enforcement agency, and, two, that they must have spoken about this, and, three, that it must have provided exculpatory information. It does not get more speculative than that, and the Court should deny it on that ground. More specifically, on July 15th, three days before jury selection was to commence, the defense wrote a letter that described the fact that these two individuals were not charged was inexplicable, and in their brief they call it inconceivable. Their argument necessitates, as I've already said, speculation. It goes on to theorize that individuals then spoke and gave exculpatory information, and as such, the defendant cannot establish a Brady violation because his request is layered on speculation. I also just want the Court to be aware that the government did take steps to obtain files, and as the Court noted, did turn over Brady material. The Brady obligation was very important to the government. So you turned over that someone had said that one of these individuals had, just to shorten it, was a potential alternative perpetrator? Yes. And did you have to turn that over? Yes, Your Honor. Once we were in possession of information of an alternative perpetrator, of course, we must. And where did that information come from? That came from an individual who was represented by an attorney whose name we then gave to defense counsel. It didn't come from NYPD information? So the claim about the alternate perpetrator came from two sources. First was the individual who was represented by an attorney. That information was turned over to defense counsel in March of 2023. No, I'm sorry. That information was turned over to defense counsel in December of 2021. The second individual who gave information related to this alleged alternate perpetrator did come from an NYPD file where an individual was interviewed and had heard from another individual, neither of whom were present for the murder, that this other individual was the person responsible for the murder of Julio Vasquez. And so that information was turned over in March of 2023. And you had to turn that over? Of course, Your Honor. And how does, in terms of the prosecution team argument, how does that differ? Just taking that, how does that differ from the information that was requested? Well, and I understand there's other arguments related to it about speculation and the like, but you also make an argument that it wasn't in your possession because it relates to the NYPD investigation. I'm trying to understand how those two things would be different. Well, Your Honor, we did get NYPD files, and the Brady material was in the NYPD files. The request was to go then ask another prosecuting office, the Queens DA's office, and the NYPD to do a scrub because their absence from the charging document was inexplicable. And so I think where the prosecution team comes in is where, number one, a request is based on so much speculation three days before a trial that it wasn't a founded request for Brady material. And I think the law on the circuit is clear that the NYPD and the Queens writ large are not part of the prosecution team. Can I ask, if you had received, if you had information that someone who is a potential alternative perpetrator, is a cooperator, are you under a Brady obligation to turn that over? Sorry. The first part is, we have information that someone gave material information about exculpating the defendant. Well, that's putting it out of general. I'm asking specifically, if you have information that someone who's someone else says committed a crime, committed the murder, that's charged. I mean, obviously there's a difference between ordering the murder and doing the stabbing and all of these things. But just to simplify, you have information that not the person that your trial testimony is going to establish committed the stabbing murder, that somebody else did that, and that person is a cooperator. Are you under a Brady obligation to disclose that to the defense? Yes. We have to disclose to the defense any Brady material. And as you've described it, an alternate... And would that include, if you knew it, if they were a cooperator for NYPD? I see. So the question is, do I have to reveal whether or not they are a cooperator? I think the practice is generally no, that cooperation with law enforcement for a whole variety of reasons is not the practice of the government. And quite frankly, the cooperation itself doesn't sound like, at least in this hypothetical, the exculpatory material. It is the fact that this individual has information about an alternate perpetrator. So whether or not the fact someone is cooperating is exculpatory... I'm saying, maybe I'm apologizing if I'm not clear, if you have information that an alternative perpetrator is a cooperator with the NYPD that is an alternate perpetrator, that has investigated the crime, are you required to disclose not only the information regarding the alternative perpetrator, but that the alternative perpetrator is a cooperator? I don't believe so, Your Honor. I don't know that the fact of cooperation in and of itself is exculpatory. Isn't that a difficult question to answer categorically? I mean, the Brady Obligation extends to evidence, favorable evidence in the government's possession, and whether someone is a cooperator or not in other matters, it would depend on how that impacted the case at hand. I'm not sure I see how you answered that categorically. That's a fair response. Of course, it is very fact-specific. I'm just not sure under the hypothetical that was posed to me why the fact of cooperation would necessarily be exculpatory if the information of an alternate perpetrator was provided. However, in an abundance of caution, I'm sure the government would turn that over. And in this case, as we know from the record, the government did make multiple Brady disclosures, so we did not shy away from our Brady Obligation. Can I ask, this is also a difficult question to answer, but the obligation is to turn over material in sufficient detail and sufficient robustness that the defendant can make use of it at trial. Was that satisfied here? Yes, Your Honor. The government provided, as has already been stated in the argument, the attorney for Individual 1. The government provided the names of the other individuals who were in the NYPD files, and the defense had that for many, many months. In fact, the case was adjourned so that the defense could pursue this claim that was provided to them. So I do think that the disclosure was adequate. I will turn to point number three, that supervised release was plainly not erroneous. As Your Honor pointed out, the government's position is that the claim is waived, that not in written submissions nor at the actual sentencing proceeding did the defense object to the immigration clause, which was provided to the defense almost a year before sentencing. Secondly, the claim is not right for review. I'm sorry, is your argument that if it's provided in advance and no objection is made, it's waived in the sense of we don't consider it at all, or you mean we review for plain error? I mean, in the first instance, we would say the government's position is that you would not review it at all, that they were on notice, they did not object. However, if the court is inclined to review the claim, it would be under a plain error standard. Can I? I'm a little confused a little bit, though. As I understood the question from Judge Nathan, it was that assuming that the defendant had notice of these conditions, say in the PSR, and then simply didn't say anything, you're saying that would be waiver? No, I'm sorry. I'm sorry. They were asked at sentencing if there was any objection. Right. I'm sorry. I didn't think that was baked into the question. It was. Because I thought that was the distinction. I apologize. That happens all the time. You had two flavors of sentencing, I think, the kind where everybody has advance notice and then nobody says a peep. That, to me, seems like a classic forfeiture situation. HS never comes up. There is silence. Assuming that one can't contextually deduce that the silence was, in fact, a strategic choice, we are traditionally under 52B, plain error review. But your opponent is suggesting that even here where the question was asked, the question wasn't is there any objection, is there any legal reason why this can't be imposed? The answer was no. Your adversary suggests we need to ask was there a strategic reason behind it or not. What is your view about that? Because we do generally talk about waiver in terms of obtaining or making a strategic choice. Does there need to be a strategic choice? I don't read the case law to specifically impose that there be a strategic choice in this Court determining that there has been a waiver, although there, of course, the Agrawal case that my adversary cited, there was a strategic choice in not objecting to that particular jury instruction. I don't read the case law to say there must be a strategic choice in a waiver. Do we have any case from our Court saying in this scenario, because it doesn't strike me that we do, but do we have a case from our Court where we say that this scenario is waiver? Because I've seen it in other circuits. But I haven't seen a case from our circuit where we say one way or the other. Tell me if I'm missing. I'm not aware of one, Your Honor, in this particular context. In which case can I then ask you, is there something about the phrasing of what the district court invited comment on? Is there a legal reason why I cannot impose that? Should we distinguish that question from, say, a broader one saying is there any objection? Because one could make the argument, I suppose, that asking whether there's a legal reason why I can't do something is only one basis for a potential objection. One could also say, well, no, legally you can do that, Your Honor. You could impose a sentence at the high end or above the guideline range. It would be legal. But I would advocate that you not do it. Or I think there is a prudential reason you ought not to do it. Or based on the facts of the case, you can't do that. In other words, should we read the district court's invitation for input from the parties as something narrower than foreclosing even plain equity review? No, Your Honor. I think that's a fair question. I think what I would point to are the facts and circumstances in this case, that in the written submission there were various junctures at which defense could have objected to this clause, including objecting to the – in their sentencing submission and then during the course of the sentencing. And so while that question was not narrow to does anyone have a specific objection, the court did at the outset of sentencing indicate that she was going to rely on a number of things to include the probation department's sentencing recommendation, including the special conditions. And so – But that seems like you're just going back to it never came up. And that seems like classic plain error. There are many opportunities that the defense had to object. They just never took advantage of them. That seems to me the standard rubric for plain error. Now, I think just to spin out another counterargument, this time for the government, it says is there any legal reason why I can't impose that? One could say, well, the argument now raised by the defense on appeal is a purely legal question, saying it is unconstitutionally vague. That's a quintessential legal objection. And therefore, by affirmatively saying I'm not raising a legal objection, you are foreclosing any future legal objections. I don't know what your – do you have any thought on that? I know the parties have not argued it. I may be getting a little beyond this, but I'm trying to explore the concept to understand the contours of my mind. Yes, Your Honor. I do think that that would have been an appropriate time to claim that it was overbroad and vague. And the answer was no. I don't know that – I continue to argue that it was waived, given the various opportunities to object and the outright no to there being no legal impediment to imposing the sentence. However, if this Court is inclined to deem it to be forfeited rather than waived or review it at all, it would, as we've discussed, have been under a plain error. And the defendant fails under a plain error standard because this – the imposition of this clause does not affect a substantial right. It is reasonably related to the sentencing factors, and there's no greater deprivation of liberty than reasonably necessary. The remaining point in the brief is that the district court did not err in its evidentiary rulings, and if there are no further questions, then the government will rely on its brief. Thank you. Thank you. Mr. Rivera. Thank you, Your Honor. I think Your Honor crystallized the case, which is that the only way that the government doesn't have an obligation to answer that question as to whether there is a relationship between those two persons, an NYPD or the Queens DA's office, is if they are not part of the prosecution team. And the March 2023 Brady disclosure is the DD-5. It's a detective's interview back at the time of the crimes. They have a NYPD officer sitting at the table. Was he a TFO, though? Yes, but still, he's NYPD because they're all NYPD witnesses. Isolate that variable, though. Are you suggesting that whenever there's a TFO involved in a case, the TFO's home agency is automatically part of the prosecution team, or is it more that this is simply one data point in a constellation of data points that, in your view, brings NYPD in? The latter, because this Court has never had a criteria-oriented test. It's a totality of the circumstances, case-by-case, fact-specific. Here, this is an NYPD case transferred for charging purposes to the Federal Government. And if we had that information, we could get it, Your Honor, just in terms of going back to one of your earlier questions. The government actually put in evidence about how they tried to cultivate Mr. Vasquez as a basis for why he was targeted for death. So the flip side is good for us, that we could show the cultivation of others and the impact it had on the charges and the evidence at trial. Thank you. Just very briefly, Your Honors. I note that the government, in its brief and in its argument, made no effort to distinguish the four or five cases cited by Mr. Salvador in his briefing, showing that this Court, as recently as 2025, has consistently applied plain error review. When things are raised in a pre-sentence report, no objection is made. And I have not specifically looked into it, but I would bet that at the end of sentencing, the same question, is there any legal basis under which I cannot impose this sentence, was probably also asked in all of those cases. And so sort of. I asked it in every one of my sentences. Yes, Your Honor. As most district judges do. I think, again, it goes, I mean, I want to go back to the question of can these can objections to terms of supervised release be waived outside of the context of the plea agreement? The answer seems to me clearly yes. And then I'm looking for your views on what that would look like. Again, I think. And I understand you would say this isn't sufficient, but why not? And therefore, what would be sufficient? I think I would, again, point to what I have consistently understood this Court looks for, which is some strategic benefit to the defendant in agreeing not to object to something. Just like in a plea agreement, there is a strategic benefit, usually, to the defendant in waiving their right to appeal certain things from their conviction. Can we infer the strategic benefit? Or does it need to be expressly stated by the defense on the record? So I would say the bar for inference would need to be pretty high, since waiver means this Court is not going to touch the issue at all. But yes, I believe in the past the Court has inferred a strategic benefit when it's been blatantly obvious from the record that a jury instruction was requested or not requested, or something in a plea agreement was specifically waived or raised or not raised. Thank you, Your Honors, for your time. Thank you all. Well argued, and we'll take the matter under advisement.